IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS E. NUNEZ, M.D. | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TEMPLE PROFESSIONAL | : | NO. 03-CV-6226 |
| ASSOCIATES, et al., | : | |
| Defendants. | : | |

MEMORANDUM

LEGROME D. DAVIS, J.                                                                                  DECEMBER 13, 2005

Presently before the Court are Plaintiff's Rule 60 Motion for Judgment or, in the Alternative, Rule 59 Motion for a New Trial (Doc. No. 44) and Defendants' Response thereto (Doc. No. 47). For the reasons that follow, Plaintiff's Motion is DENIED.

I.      PROCEDURAL HISTORY

Plaintiff Luis Nunez, M.D. brought this action against Defendants Temple Professional Associates, Temple University Health System, Inc. and Temple Physicians, Inc. on November 13, 2003. In his Complaint, Plaintiff alleged that Defendants violated the Age Discrimination and Employment Act (Count I), violated the Pennsylvania Human Relations Act (Count II), breached the employment agreement (Count III) and misclassified Plaintiff in order to avoid paying ERISA benefits (Count IV). Cross-motions for summary judgment were filed.[1] Defendants' Motion for Summary Judgment was granted with respect to Counts III and IV. Defendants' and Plaintiff's Motions for Summary Judgment were denied with respect to Counts I and II.

---

[1] Defendants filed a Motion for Summary Judgment on August 2, 2004, and Plaintiff filed a Cross-Motion for Summary Judgment on August 23, 2004.

On June 16, 2005, Plaintiff filed a Motion in Limine seeking to preclude Defendants from offering certain testimony and evidence. The Court denied this motion. On June 24, 2005, Defendants filed a Motion in Limine seeking to preclude Plaintiff from offering evidence under a disparate impact theory. The Court granted this motion.

On July 7, 2005, the trial on Plaintiff's age discrimination claims, Counts I and II, began. Plaintiff argued that he had been terminated from his employment with Defendants because of his age. Defendants, on the other hand, argued that Plaintiff had been hired on a temporary basis, and that he was not qualified for a permanent position because he was not board certified. After a four day trial, the jury found in favor of Defendants on both counts.  On July 15, 2005, Plaintiff filed a Rule 60 Motion for Judgment or, in the alternative, a Rule 59 Motion for a New Trial.

II.     FACTUAL HISTORY

In October 2001, when Plaintiff Luis E. Nunez, M.D. was 65 years old, Plaintiff was hired by Defendants to provide services at the Comprehensive Health Center ("CHC") at the Episcopal Campus of Temple University Hospital.  Specifically, Plaintiff was hired to cover for Dr. David Stricklan, who was one of two physicians responsible for supervising residents in the internal medicine residency program at Episcopal Hospital.  7/11/05 Tr. at 68.

In order for an institution to be accredited, faculty members in a residency teaching program, such as Dr. Stricklan, must be board certified. Id. at 69.  Since Dr. Stricklan was not board certified, Dr. Mankin, who was responsible for hiring and firing physicians, told Dr. Stricklan that if he did not become board certified, he would be asked to leave the group. Id. at 72.  As a result, in the late fall of 2001, Dr. Stricklan resigned, effective January 1, 2002. Id. at 68-69, 72.  Plaintiff was hired to cover for Dr. Stricklan, as he was frequently absent during the

period before the effective date of his resignation.[2]

As the permanent departure of Dr. Stricklan neared, CHC had the immediate need for a bilingual physician to take over Dr. Stricklan's patient schedule.[3] As a result, Plaintiff and Defendants entered into a formal part-time employment agreement, which provided that Plaintiff would work thirty-two to forty hours per week for Defendant Temple Professional Associates ("TPA"),[4] performing "the full range of professional services customarily performed by physicians engaged in the practice of general and family medicine."[5] The contract was printed on letterhead bearing the names of both Defendant Temple University Health System ("TUHS") and Defendant TPA. The contract stated that Plaintiff would be employed by Defendant TPA effective January 2, 2002.

Dr. Mankin testified that Dr. Nunez was never considered as a full time replacement for Dr. Stricklan because Dr. Nunez was not board certified "and that was a mandatory feature of any internal medicine residency." Id. at 81-82. Plaintiff provided services at CHC pursuant to his contract until March 2002, when Defendants hired Dr. Gladys Fion, who is approximately 30 years old, to fill Dr. Stricklan's former position at CHC on a full-time basis. Dr. Fion is board certified in both infectious disease and internal medicine. Id. at 84-85.

---

[2] Dr. Stricklan was missing work on a regular basis, using his remaining sick time and personal time. 7/11/05 Tr. at 76.

[3] Dr. Stricklan's teaching responsibilities were being covered by Dr. Cooper, a board certified internist. Id. at 83.

[4] As of July 2003, TPA no longer exists as a separate entity. During the course of Plaintiff's employment, Defendants maintain that he became an employee of Temple Physicians, Inc. ("TPI"). Defs' Mot. for Summ. J. at 3 n.3.

[5] Plaintiff was not expected to, nor was he qualified to, teach residents. Id. at 83.

After Dr. Fion was hired, Defendants transferred Plaintiff to another practice, Temple Community Medical Center ("TCMC"), in order to fill the position of Dr. Martin Munoz, a physician at TCMC who had announced his retirement. Dr. Mankin testified that Plaintiff was not considered to be a full time replacement for Dr. Munoz because Plaintiff was not board certified and Plaintiff did not have a background in family practice.[6] Id. at 93-94, 108. Plaintiff filled this position pursuant to his December 2001 contract until July 1, 2002, at which time Defendants notified Plaintiff that his last day would be July 2, 2002. Plaintiff's termination was precipitated by Defendants' hiring of Dr. Daniel Hernandez, who had recently completed a residency in family practice, to fill the position vacated by Dr. Munoz on a full-time basis.[7] In the termination notice, Defendants communicated to Plaintiff that he would be paid until August 24, 2002, as Defendants interpreted the contract to require thirty days notice before cessation of pay. At the time of his termination, Plaintiff was 66 years old.

III.    RULE 60 MOTION FOR JUDGMENT

Under Rule 60, the court may relieve a party from a final judgment if the court finds any reason "justifying relief from the operation of the judgment."[8] Fed. R. Civ. P. 60(b). Under Rule

---

[6] Dr. Mankin testified that all candidates for employment were required to have board certification or board eligibility. Id. at 53-54. The position required a background in family practice because the physician might be called upon to cover for a pediatrician. Id. at 94-95.

[7] While Dr. Hernandez was not board certified, he was board eligible and planned to take the board certification test. Id. at 102-103. Dr. Hernandez subsequently became board certified. Id. at 105.

[8] Plaintiff does not specify under which section of Rule 60(b) his claim is brought. Plaintiff has not argued that there is newly discovered evidence, that there was misconduct by the Defendants, that the judgment is void, or that the judgment has been satisfied, released or discharged. See Fed. R. Civ. P. 60(b)(2)-(5). Plaintiff has argued that mistakes were made by this Court; however, alleging that the trial court made incorrect legal determinations does not

60(b)(6), relief is available only in cases evidencing extraordinary circumstances. Morris v. Horn, 187 F.3d 333, 341 (3d Cir. 1999) (quoting Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977)).  Rule 60(b)(6) may not be used as a substitute for an appeal. Id.

In the current motion, Plaintiff alleges that judgment should be entered against the Defendants under Rule 60 because (1) the court erred in granting summary judgment to Defendants on Count III of his Complaint, (2) the court erred in denying his Rule 50 Motion on Board Certification, and (3) the jury's verdict was contrary to the law. Pl.'s Mot. for Judg. at 1-2.

A.   Summary Judgment on Count III of Plaintiff's Complaint

Plaintiff argues that the Court erred in granting summary judgment on Plaintiff's breach of contract claim and that, therefore, he is entitled to relief from the final judgment pursuant to Rule 60.[9] Pl.'s Memo. at 7-13. Plaintiff's argument in support of this contention is virtually identical to that presented in his Cross-Motion for Summary Judgment. Compare Pl.'s Memo. at 7-13, with Pl.'s Cross-Mot. for Summ. J. at 9-17. Plaintiff has neither cited new case law nor referenced new evidence that arose during trial. In effect, Plaintiff is asking this Court to review its legal determination of February 22, 2005. Alleged legal error, by itself, does not warrant the

---

implicate Rule 60(b)(1). See Boughner v. Secretary of Health, Educ. & Welfare, 572 F.2d 976, 977-78 (3d Cir. 1978) (citing Assocs. Discount Corp. v. Goldman, 572 F.2d 976 (3d Cir. 1975)). Therefore, Plaintiff's claims will be analyzed under the catchall provision, Rule 60(b)(6).

[9] Plaintiff also argues, under Rule 59, that the breach of contract claim should have been submitted to the jury. Pl.'s Mot. for Judg. at 3.  A Rule 59 Motion is a motion for a new trial. Fed. R. Civ. P. 59. Since there has been no trial on this issue, a motion for a new trial is inappropriate. See Marshall v. Boyd, 658 F.2d 552, 553 n.2 (8th Cir. 1981) (construing a Rule 59 motion as a Rule 60(b)(6) motion when no trial was held).

application of Rule 60.[10] Martinez-McBean, 562 F.2d at 912. Because Plaintiff has alleged nothing but legal error, this Court denies Plaintiff's Motion for Judgment with regard to Count III of Plaintiff's Complaint.[11]

B.   Rule 50 Motion for Judgment on the Board Certification Issue

Plaintiff contends that Defendants should have been precluded from using board certification as an employment criteria.[12] Pl.'s Memo. at 21-26. Plaintiff's argument in support of this contention is virtually identical to that presented in his Rule 50 Motion. Compare Pl.'s Memo. at 21-26, with Pl.'s Rule 50 Mot. at 5-9. Again, Plaintiff is asking this Court to review its previous legal determination. Since Plaintiff has cited neither new case law nor new evidence in support of his contention, this Court cannot review this decision under Rule 60. See Martinez-McBean, 562 F.2d at 912. This Court denies Plaintiff's Motion for Judgment with regard to the board certification issue as it arises in Plaintiff's Rule 50 Motion.[13]

C.   Jury's Verdict Contrary to the Law

Plaintiff argues that the jury's verdict was contrary to the law because Defendants "were permitted to utilize an employment criteria contrary to 29 C.F.R. § 1607." Pl.'s Mot. for Judg. at

---

[10] "The correction of legal errors committed by the district courts is the function of the Courts of Appeals." Martinez-McBean, 562 F.2d at 912.

[11] If Plaintiff's Motion for Judgment with regard to Count III of Plaintiff's Complaint was addressed on the merits, it would be denied for the reasons set forth in this Court's February 22, 2005 memorandum.

[12] Plaintiff submitted two separate motions asking this Court to preclude testimony regarding the employment requirement of board certification: a pre-trial motion *in limine* and a Rule 50 Motion for Judgment. Both motions were denied.

[13] If Plaintiff's Motion for Judgment with regard to the admissibility of board certification testimony was addressed on the merits, it would still be denied. See Part IV.C

3.  The Uniform Guidelines on Employee Selection Procedures contained in 29 C.F.R. § 1607 et seq. apply in the disparate impact context.[14] See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 995 n.3 (1988) (describing how lower courts look to 29 C.F.R. § 1607 for guidance in adverse impact cases); see also 29 C.F.R. § 1625.7 (stating that when an employment practice, including a test, has an "adverse impact on individuals within the protected age group,"the test "will be scrutinized in accordance with the standards set forth at part 1607 of this title"). In the current case, Plaintiff was precluded from offering evidence under a disparate impact theory. See Josey v. Hollingsworth Corp., 996 F.2d 632, 641-42 (3d Cir. 1993) (finding that a district court properly dismissed an untimely disparate impact claim). Since the disparate impact theory of liability was not available, 29 C.F.R. § 1607 is not controlling law in this case. Therefore, the jury's verdict was not contrary to the law.

IV.   RULE 59 MOTION FOR A NEW TRIAL

A court may grant a new trial pursuant to Rule 59 "for any of the reasons for which new trials have heretofore been granted in actions at law in the court of the United States." Fed. R. Civ. P. 59(a). Case law has established that a court has the clear authority to order a new trial where, among other things, the verdict was against the weight of the evidence, where the size of the verdict was too large or too small, where new evidence has been discovered, where the judge or any attorney engaged in misconduct, and where a prejudicial error of law was made. See 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2805, at 38 (1973).  No error is ground for granting a new trial "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed. R. Civ. P. 61.

---

[14] 29 C.F.R. § 1625.7 extended §1607 to the age discrimination context.

Plaintiff alleges that a new trial should be granted under Rule 59 because (1) the jury's verdict was against the weight of the evidence, (2) the court erred in granting Defendants' Motion in Limine regarding Plaintiff's disparate impact theory of liability, (3) the court erred in denying Plaintiff's Rule 50 Motion on Board Certification, and (4) the court erred in its charge to the jury. Pl.'s Mot. for Judg. at 3-6.

A.    Jury's Verdict Contrary to the Weight of Evidence

A court should order a new trial when, in its opinion, the verdict is contrary to the "great weight of the evidence." Roebuck v. Drexel Univ., 852 F.2d 715, 736 (3d Cir. 1988). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991); see also Roebuck, 852 F.2d at 736. This is not the case here.

Plaintiff contends that the jury's verdict was against the great weight of the evidence because "the evidence overwhelmingly established that the defendants did not have an employment criteria; and if they did, it was not applied in an ever [sic] handed manner."[15] Pl.'s Mot. for Judg. at 3.  This Court disagrees. The evidence presented at trial supports Defendants' contention that they had an employment criteria. For instance, Dr. Mankin, an employee of Defendants who was responsible for hiring and firing physicians, stated during his testimony that candidates for employment are "expected either to have board certification or board eligibility

---

[15] Plaintiff does not address this contention in the memorandum of law that accompanies his motion. Defendants address whether the jury's verdict is contrary to the weight of the evidence when addressing Plaintiff's Rule 60 Motion. Defs' Memo. at 11-12.

with the expectation that they'll be gaining board certification." 7/11/05 Tr. at 53. Dr. Mankin admitted that exceptions to this requirement were made when Defendants were acquiring practices. Id. at 54. He also testified that this requirement was not part of a written policy, as it "never occurred to [him] to put it in writing" since he was the only one in a position to use it. Id. at 59-60. Dr. Fion, the doctor who was hired to replace Dr. Stricklan, was board certified in both infectious disease and internal medicine. Id. at 84-85. Dr. Hernandez, the doctor who was hired to replace Dr. Munoz, was told that he needed to become board certified. Id. at 103-05. Because the evidence supports a finding that Defendants had an employment requirement of board certification, this Court will not disturb the jury's findings.[16]

B.  Defendants' Motion in Limine Regarding Plaintiff's Disparate Impact Theory of Liability

Plaintiff claims that the Court erred in refusing to allow Plaintiff to argue that Defendants' job criteria had the effect of discriminating against older workers. Pl.'s Memo. at 30.

---

[16] Even if the evidence established that Defendants did not have an employment criteria, the jury's verdict was not against the weight of the evidence. Plaintiff's claim is based on a misunderstanding of the McDonnell Douglas burden shifting for discrimination cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Defendants must produce an explanation to rebut Plaintiff's prima facie case of age discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993). Defendants' burden is one of production, not persuasion. See id. at 507. In the current case, Defendants' explanation for not continuing to employ Plaintiff was that he did not meet the employment requirement of board certification. Since Defendants met their burden of production, the burden shifted to Plaintiff, who had to show that the proffered reason was not the true reason for the employment decision, but rather age was. Id. at 507-08. Even if the jury believed that the board certification requirement did not exist, as Plaintiff contends, Plaintiff still had the burden to show that age was a determinative factor in the employment decision. The jury's decision was not based on whether or not Defendant's explanation was true, but whether age was a determinative factor in Defendant's decision to fire Plaintiff.

Plaintiff did not raise his disparate impact theory of liability in a timely manner.[17] Therefore, Plaintiff was precluded from advancing it. Josey v. Hollingsworth Corp., 996 F.2d 632, 641-42 (3d Cir. 1993). As a result, Plaintiff's motion for a new trial on this basis is denied.

C.      Rule 50 Motion for Judgment on the Board Certification Issue

Plaintiff reiterates the arguments set forth in his Rule 50 Motion, alleging that Defendants should have been precluded from using board certification as an employment criteria because Defendants did not establish the relationship between board certification and job performance, Defendants did not maintain appropriate records with regard to their selection procedure, and Defendants did not conduct appropriate studies to determine the correlation between board certification and job performance. Pl.'s Memo. at 21-26. Plaintiff's arguments are based on the Uniform Guidelines on Employee Selections Procedures, which are designed to provide a framework for determining the proper use of selection procedures in the employment context. 29 C.F.R. § 1607.1(B).[18] These guidelines apply in the disparate impact context. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 995 n.3 (1988); see also 29 C.F.R. § 1625.7. Because Plaintiff's disparate impact claim was not timely raised, this Court did not allow Plaintiff to assert a disparate impact theory of liability during trial. See Josey v. Hollingsworth Corp., 996 F.2d 632, 641-42 (3d Cir. 1993). As a result, Plaintiff's motion for a new trial on this basis is denied.

---

[17] Plaintiff's Complaint does not allege a disparate impact claim, and Plaintiff did not move to amend his pleadings to include a disparate impact claim during discovery. Defendant was first put on notice that Plaintiff intended to raise this issue on June 14, 2005, 23 days before the trial was to begin. Def.'s Mot. *in Limine* at 7.

[18] 29 C.F.R. § 1625.7 extended §1607 to the age discrimination context.

D.      Jury Instructions

On June 16, 2005, the parties submitted proposed jury instructions to the Court. This submission contained the parties' agreed upon points for charge.[19] The parties separately submitted the disputed points. The Court charged the jury in this matter on July 12, 2005. Before the Court instructed the jury, the Court stated that the parties had preserved their objections to any instruction that they requested and were not given. 7/12/05 Tr. at 49-50. At the close of the Court's instruction, attorneys for both parties were invited to sidebar to register any further objections. Id. at 122-25. A written copy of the instructions was provided to the jury.[20] Id. at 102, 121-22.

A jury instruction is reviewed to determine "whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submit[ted] the issues in the case to the jury." Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 922 (3d Cir. 1986). A court's review of a jury instruction should be undertaken with an eye towards the instructions in their totality and "not a particular sentence or paragraph in isolation." In re Braen, 900 F.2d 621, 626 (3d Cir. 1990), cert. denied, 498 U.S. 1066 (1991). In addition to showing that the Court committed legal error in giving a certain instruction, a party must also show that the error had a prejudicial effect. Advanced Displays Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1281 (Fed. Cir. 2000). Prejudicial legal error exists where it "appears to the court [that the error is] inconsistent with substantial justice." Id. (citing Fed. R. Civ. P. 61).

    1.    Failure to Charge the Jury Pursuant to Plaintiff's Points for Charge

---

[19] The areas of disagreement far exceeded the areas of agreement.

[20] The written instructions and the oral instructions differ slightly.

Plaintiff alleges that the Court erred in failing to charge the jury as requested in Plaintiff's Points for Charge 1-5, 7-11, 13-23, 26-28, 34 and Plaintiff's Supplemental Points for Charge 1-15. Pl.'s Memo. at 27. Specifically, Plaintiff contends that the jury was not properly instructed on what constitutes pretext and that the Court did not correctly set out the burden of proof.[21] The Court finds these contentions to be without merit.

The burden shifting framework in discrimination cases is well established. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court, relying on Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 140-43 (2000), and St. Mary's, described this framework in detail in its oral and its written instructions. See 7/12/05 Tr. at 103-22; Def.'s Memo, Ex. D. The Court, admittedly, did not adopt the wording in the Points of Charge and Supplemental Points of Charge at issue; however, a litigant does not have the right to a jury instruction "of its choice, or precisely in the manner and words of its own preference." Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995).

Plaintiff claims that the jury was not properly instructed on what constitutes pretext. Pl.'s

---

[21] Not surprisingly, Plaintiff also alleges that the jury was not properly instructed on "the consequences of defendants' employment practice," i.e. the disparate impact theory. Pl.'s Memo. at 28; see Points for Charge 13-15, 19-23. This Court reiterates that Plaintiff was precluded from advancing a disparate impact theory of liability because Plaintiff did not raise this issue in a timely manner. Relatedly, Plaintiff contends that the jury was not properly instructed on the employment instructions contained in 29 C.F.R. § 1607. Pl.'s Memo. at 28-29; see Supp. Points for Charge 1-14. As this Court has held that these employment guidelines apply to the disparate impact context, the jury was not entitled to hear instructions based on these guidelines.
    Plaintiff also alleged that the jury was not properly instructed regarding Plaintiff's claim that his part time employment was a violation of the ADEA. Pl.'s Memo. at 29. The jury instruction at issue addresses Plaintiff's Count IV, which was disposed of before trial. Plaintiff's argument in support of this instruction is identical to that set forth in his Cross-Motion for Summary Judgment. See Pl.'s Cross-Mot. for Summ. J. at 38. Since this issue was not before the jury, this Court properly refused to instruct the jury on it.

Memo. at 27. This Court disagrees. After describing the first two steps of the Supreme Court's burden shifting framework, the Court stated in its oral instructions that "in the final step, you put all of this together and you assess whether the reason that was offered was a pretext or a false reason or whether it was a true reason." Tr. at 113.  The Court elaborated on what it meant by pretext in the written instructions that it provided the jury, stating that "Plaintiff must prove ... that defendant's explanation for their actions is a pretext for age discrimination. In other words, to prevail on this claim, plaintiff must prove by a preponderance of the evidence that defendants' explanation is not worthy of belief or that defendants were actually motivated by age, and that age was a determinative factor for their decision not to renew his employment contract." Def.'s Memo, Ex. D at 6. These instructions set forth the correct legal standard for what constitutes pretext. See Watson v. Southeastern Pennsylvania Transportation Authority, 207 F.3d 207, 215-16 (3d Cir. 2000).

     Plaintiff also contends that the Court "never correctly set out the burden of proof - [i.e.] if the jury found that age was, more likely than not, a determinative factor in the defendants' employment decisions, plaintiff should have been entitled to recover." Pl.'s Memo. at 27-28.  In its oral instructions, the Court stated that "the burden is on plaintiff to establish that age is a determinative factor in [defendants' decision]. A determinative factor means that the plaintiff must prove that the defendants would not have taken the adverse decision except for the plaintiff's age." 7/12/05 Tr. at 116; see also Watson, 207 F.3d at 215-16. The written jury instructions provided that "to prevail on this claim, plaintiff must prove by a preponderance of the evidence ... that age was a determinative factor for their decision not to renew [Plaintiff's] employment contract." Def.'s Memo, Ex. D at 6.  The jury instructions set forth the correct

13

burden of proof. See Watson, 207 F.3d 215-16.

    2.     The Third Circuit's Decision in Smith

Plaintiff contends that the jurors were not instructed, as required by Smith v. Borough of Wilkinsburg, 147 F.3d 272 (3d Cir. 1998), that they were "entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision." Smith, 147 F.3d at 280. See Pl.'s Memo. at 17.  At no point during Plaintiff's litany of objections to the jury instructions did Plaintiff request that the Court charge the jury in light of the Third Circuit's decision in Smith. See Pl.'s Proposed Jury Instructions; Pl.'s Supp. Requests to Instruct the Jury. See also 7/12/05 Tr. at 49, 122-25 (preserving Plaintiff's written objections).  Federal Rule of Civil Procedure 51 provides that a party who objects to the failure to give a jury instruction must state "distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51(c); see also Smith, 147 F.3d at 276-78.  This rule ensures that the court is made aware of and given an opportunity to correct any alleged error in the charge before the jury begins deliberations. Smith, 147 F.3d at 276. Since Plaintiff did not make a timely objection on Smith grounds, this claim of error has not been preserved.[22]

V.    CONCLUSION

Accordingly, this Court denies Plaintiff's Rule 60 Motion for Judgment or, in the Alternative, Rule 59 Motion for a New Trial. An appropriate order follows._____

---

[22] Even if the objection had been preserved, the jury instructions, taken as a whole, fairly and adequately submitted the issues in the case to the jury. See Part IV.C.1.  Therefore, no legal error occurred.